IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JOHN DOE,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>AMCO INSURANCE COMPANY, an<br>Iowa corporation,<br><br>　　　　Defendant. | Case No. _____<br><br><br><br>**COMPLAINT**, **JURY DEMAND AND**<br>**DESIGNATION OF PLACE OF TRIAL** |

John Doe, for his cause of action against Defendant, by and through his counsel of record, alleges and avers:

## PARTIES, JURISDICTION AND VENUE

1.

John Doe ("DOE") is a resident of Arapahoe, Furnas County, Nebraska.  He is named by this pseudonym due to the humiliating nature of the events underlying this case, although on information and belief his true identity is well known to all Defendants herein.  Defendant Elwood Public School District ("EPSD") is a Nebraska political subdivision.  Defendant David Blessing ("BLESSING") is and was employed by Defendant EPSD as a school guidance counselor at all relevant times, and is liable for his actions in his individual and official capacities.  Defendant AMCO Insurance Company ("AMCO") is an Iowa corporation doing business in the State of Nebraska; it was an agent of EPSD at all relevant times since at least 1999.  Any and all actions undertaken by any and all of the Defendants constituted actions under color of state law.

2.

This action is brought pursuant to the provisions of 28 U.S.C. §§1331, 1332 and 1333.  The proper venue for this action is the United States District Court for the District of Nebraska because

the acts and omissions complained of herein occurred in Elwood, Gosper County, Nebraska and Arapahoe, Furnas County, Nebraska.

## FACTUAL BACKGROUND

3.

From August 1992 until May 1994, Elwood Public School District ("EPSD") employed a teacher named Michael Kluck. During his tenure at EPSD, EPSD knew or should have known that Kluck had a propensity toward inappropriate, sexualized behavior toward students.

4.

Since at least November 1992, Kluck had been "grooming" DOE, then a student in EPSD, for eventual molestation and in so doing was acting within his capacity as an employee of and in the course and scope of his employment with EPSD. Kluck befriended DOE and his family, and gained the trust and confidence of DOE's parents as a member of the EPSD professional staff and as a valuable mentor to DOE. For the purpose of furthering Kluck's duties as a member of the EPSD professional staff, Kluck also sought and gained the trust, friendship, admiration and obedience of DOE. As a result, DOE was conditioned to comply with Kluck's direction and to view and respect him as a person of authority in vocational, moral and ethical matters. This course of conduct is what is meant by reference to "grooming" activities.

5.

In spite of its knowledge of Kluck's propensities, EPSD retained Kluck as a teacher for the spring semester of 1993 and the 1993-94 school year. EPSD made no meaningful effort to restrict Kluck's access to or activities with students and imposed no restrictions on him relative to the complaints that were investigated in late 1992. Nor did EPSD make any meaningful effort to monitor

Kluck's behavior or to investigate the extent to which Kluck was engaging in "grooming" activities with young students, including DOE.

6.

The grooming was committed in direct connection with and for the purposes of fulfilling Kluck's employment and agency with EPSD; was committed within the time and space of his employment and agency with EPSD, was done directly in the performance of his duties as a member of the EPSD professional staff; and was at least initially and partially motivated by a desire to serve the interests of EPSD. Kluck's grooming of DOE contributed causally to the abuse and the damages described below.

7.

In 1993, Kluck, using the authority and position of trust as a member of the EPSD professional staff, after gaining DOE's trust and confidence through the above-described grooming activities, sexually assaulted DOE. Kluck committed the assault after deliberately gaining DOE' trust, and DOE' family's trust, in his capacity as an employee of and in the course and scope of his employment with EPSD. This occurred after the other students' complaints regarding Kluck's behavior had been received and investigated by law enforcement and after EPSD had failed to take meaningful action in response to the complaints, to include terminating Kluck's employment or, at the very least, investigating the degree to which Kluck was grooming students and attempting to identify which students Kluck was grooming.

8.

DOE told no one about the assault. EPSD asked Kluck to resign in May 1994, and upon his resignation Kluck immediately moved from Elwood to LaPorte, Texas. Thereafter, Kluck pled

guilty to and was convicted of sexual abuse of a child in the State of Texas for subsequent assaults on another child.

9.

In 1997, Kluck confessed to a counselor that he had molested DOE, specifically naming DOE and describing the molestation. In May 1997, that counselor notified then-Gosper County Attorney Carleton Clark of Kluck's report. Kluck himself then called Clark and confessed to molesting DOE. Clark notified DOE' parents of the information received from Kluck and his counselor. Clark also personally notified various employees and agents of EPSD, including but not limited to EPSD guidance counselor David Blessing ("BLESSING"), of the information received from Kluck and his counselor.

10.

DOE's parents then discussed this report with BLESSING in February 1998, and asked BLESSING to provide counseling for DOE relative to his molestation by Kluck. DOE was traumatized and humiliated by the assault, however, and was unable to meaningfully undergo counseling at that time. DOE dropped out of school without completing requirements for a diploma in January 1999, a fact obviously known to BLESSING and EPSD.

11.

By 1999, EPSD had been sued by another victim molested by Kluck. That case was captioned ***Kelly v. Elwood Public School District***. AMCO provided liability insurance coverage for EPSD and retained counsel to represent EPSD in the ***Kelly*** case. During the ***Kelly*** litigation, agents of AMCO and EPSD learned that Kluck had molested DOE, although they did not reveal that fact during the course of discovery in ***Kelly***. AMCO and EPSD and their agents were aware that the fact

of another sexual assault victim of Kluck meant another possible lawsuit against EPSD.

12.

In April 2003, BLESSING and a specific agent of AMCO, acting in concert with EPSD and AMCO and in the course and scope of their employment with EPSD, directly contacted DOE, who was at that time a few months short of his 22nd birthday, in a series of telephone calls. In this series of events, the particular agent of AMCO was acting both as an agent of AMCO and as an agent of EPSD.

13.

BLESSING and AMCO's retained counsel, in separate conversations with DOE, advised DOE that he would be required by plaintiffs' counsel in the *Kelly* case to publicly testify about the details of being molested by Kluck in the immediate future. BLESSING and AMCO's retained counsel further represented to DOE that he could be spared that experience if he signed an affidavit denying that Kluck molested him. Neither BLESSING nor AMCO's retained counsel advised DOE of the legal consequences of signing such an affidavit or of whether he had any other options; nor did either BLESSING or AMCO's retained counsel advise DOE that signing such an affidavit could have the effect of impairing or even foreclosing DOE's own cause of action once he discovered that he had a cause of action. Nor did either BLESSING or AMCO's retained counsel advise DOE to seek legal counsel (other than AMCO's retained counsel) before signing such an affidavit. BLESSING and AMCO's retained counsel held themselves out as having DOE's best interests at heart, and further held themselves out as protecting DOE from the plaintiffs' counsel in the *Kelly* case by providing a way by which DOE would not have to describe the details of his molestation for the first time ever in open court.

14.

DOE agreed to sign the affidavit, which was prepared by AMCO's retained counsel. Thereafter, on October 13, 2003, AMCO's retained counsel, acting at the behest of AMCO and EPSD, caused additional psychological trauma and distress to DOE.

15.

As a result of Kluck's sexual abuse, molestation, and breach of authority, trust and position as a member of EPSD's professional staff and authority figure to DOE, DOE has suffered severe and debilitating emotional injury, pain and suffering, emotional trauma, and permanent psychological damage. This damage has caused DOE to incur and will continue to cause DOE to incur costs for counseling and psychological treatment, past and future.

16.

As a result of the conduct of BLESSING and AMCO's retained counsel, in concert with and direction of EPSD and AMCO, in breaching their own fiduciary duties to DOE and breach of authority, trust and positions as members of and/or affiliations with EPSD, DOE has suffered additional and compounded emotional injury, pain and suffering, emotional trauma and confusion, and psychological damage. DOE has also suffered potential impairment of his cause of action against EPSD, for whom BLESSING, AMCO's retained counsel and AMCO were all working when they pressured DOE into signing an affidavit they knew to be false. Further, DOE suffered emotional and psychological damage by his treatment by AMCO's retained counsel, who was acting in the course and scope of his employment with EPSD and AMCO, in the events of October 13, 2003. This damage, too, will cause DOE to incur costs for counseling and psychological treatment, past and future.

## FIRST CAUSE OF ACTION

## BREACH OF FIDUCIARY DUTY

17.

DOE incorporates Paragraphs 1-16 above as if fully set forth herein.

18.

At all times relevant to this Complaint, Defendant AMCO was the liability insurance carrier for EPSD.

19.

At some point between January 1, 1999 and April 30, 2003, there was a mutual understanding and meeting of the minds between AMCO and its agents and representatives, including but not limited to AMCO's aforementioned agent; EPSD and its agents and representatives, including but not limited to AMCO's retained counsel; and BLESSING. The purpose of the agreement was to protect EPSD from liability in the case of ***Justin Patrick Kelly v. Elwood Public School District et al***, Gosper County District Court Case No. Ci01-20, and further to protect EPSD and BLESSING from liability from DOE by preventing DOE from discovering his cause of action against EPSD and BLESSING.

20.

The agreement between AMCO, BLESSING, EPSD and AMCO's retained counsel was thus to commit a breach of fiduciary duty against, and inflict emotional trauma upon, DOE. This damage includes but is not limited to impairment of his due process right to pursue compensation for injury and his right to trial by jury, as well as psychological damage, by:

a.  BLESSING and AMCO's retained counsel pressuring DOE to sign a false

7

        affidavit denying the fact of his molestation, when AMCO and AMCO's retained counsel had long known that Kluck molested DOE and that Kluck in fact had confessed to molesting DOE;

  b.    AMCO allowing, encouraging and/or instructing AMCO's retained counsel and BLESSING to hold themselves out to DOE as having DOE's best interests at heart, when in fact their intention and scheme was to cause DOE to impair his own cause of action before he had even discovered it to protect EPSD, with reckless disregard to the psychological consequences for DOE of the misrepresentation and betrayal by authority figures affiliated with EPSD;

  c.    AMCO's retained counsel, acting as an agent of AMCO and of EPSD, thereafter subjecting DOE to additional psychological trauma in the days leading up to and including October 13, 2002..

21.

These actions were performed for the purpose of injuring DOE, in reckless if not total disregard for DOE's rights, and in a manner that was malicious, wanton and oppressive.

22.

By the manner in which it held itself out to DOE in the course of seeking and obtaining DOE's signature on the false affidavit, and by the nature of their remarks and advice to DOE, AMCO's retained counsel acted in the capacity as a fiduciary to DOE. AMCO and its retained counsel thus owed DOE a fiduciary duty.

23.

AMCO's retained counsel both breached that fiduciary duty to DOE. That breach directly and proximately caused damage to DOE, as set forth in paragraphs 15 and 16 above.

**PUNITIVE DAMAGES**

24.

Plaintiff incorporates by reference the allegations contained in paragraph 1-23 above as

though fully set fourth herein.

24.

25.

In addition to compensatory damages, DOE hereby makes a claim for punitive damages against Defendant under Iowa law, in an amount to be proven at trial for the willful and wanton acts and omissions of defendants as alleged herein. The acts and omissions of Defendant AMCO in this case were so gross and culpable in nature that they constitute reckless indifference and wanton disregard for the law and for the lives and safety of others, including DOE. Defendant AMCO committed the acts and omissions alleged herein and subjected DOE to improper treatment that caused DOE to suffer emotional distress so severe that no person should be expected to endure it, to include attempting to deprive DOE of his cause of action before DOE had even discovered his cause of action, for purposes of perpetuating a cover-up at the foreseeable expense of a psychologically-damaged young man. Defendant AMCO's actions should be punished, and an example should be made so that these actions and omissions are not repeated.

26.

The recovery of punitive damages is permitted under Iowa law for reckless and callous disregard for the rights and well-being of others, and is thus appropriate in this case. This instance of reckless and callous indifference to DOE's psychological well-being should be punished through the imposition of punitive damages so as to make an example of conduct that will not be tolerated.

**DAMAGES**

27.

Plaintiff incorporates by reference the allegations contained in paragraph 1-26 above as though fully set forth herein.

28.

The acts and omissions of defendants as set forth above have resulted in injury to DOE. By virtue of these injuries, DOE is entitled to the following damages:

- A. Compensatory damages for DOE's psychological damage, past and future;

- B. His humiliation and sociological distress, past and future;

- C. His loss of foreseeable income;

- D. Impairment of his cause of action against EPSD for the sexual assault;

- E. Punitive damages in a reasonable amount that is sufficient to adequately punish all defendants and to deter future conduct of the reprehensible type alleged in this complaint; and

- F. The costs of this action, attorneys fees, and such other and further relief as this Court deems equitable and proper.

29.

**WHEREFORE,** Plaintiff prays for judgment against the defendants as follows:

- A. Plaintiff prays for general and special damages in an amount which will fairly and justly compensate them for the violation of his psychological damage and other consequential damages flowing from the violations and torts set forth herein, exceeding $75,000.00;

- B. Punitive damages in an amount sufficient to adequately punish defendants and to deter future conduct of the type alleged in this Complaint; and

- C. For the costs of this action and for such other and further relief as this Court deems equitable and proper.

**JURY DEMAND AND DESIGNATION OF PLACE OF TRIAL**

DOE requests that this matter be tried to a jury in North Platte, Nebraska.

        JOHN DOE, Plaintiff,

        s/ Maren Lynn Chaloupka

By:_____
        Maren Lynn Chaloupka – NSBA # 20864
        Robert P. Chaloupka – NSBA # 10653
Chaloupka Holyoke Hofmeister Snyder & Chaloupka
1714 2nd Avenue
P.O. Box 2424
Scottsbluff, Nebraska 69363-2424
(308) 635-5000

11